**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERTA FULKS, as guardian of
JIMMY LEE DANIEL, a minor,

      Plaintiff,

      v.

PAUL GASPER,

      Defendant.

CIVIL ACTION NO. 3:04-CV-2752

(JUDGE CAPUTO)

## MEMORANDUM

      Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 15), Plaintiff's brief in opposition (Doc. 29), Defendant's reply brief (Doc. 26) and Defendant's supplemental brief (Doc. 29).  For the reasons set forth below, Defendant Paul Gasper's Motion for Summary Judgment will be granted in part and denied in part.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1367.

## BACKGROUND

      On September 10, 1998, as a member of a specialized response team in the Stroudsburg Borough Police Department, Gasper participated in the execution of a search warrant on Apartment 85A, Analomink Street, Stroudsburg, Pennsylvania.  (Doc. 24 at ¶¶ 1-3.)  The raid occurred around six (6) a.m..  (Doc.17 at ¶ 19.)  When Gasper entered the apartment and then the bedroom, he saw a few people as well as a dog.  (*Id*. at  ¶ 19.)  Gasper told the woman in the room to control the dog.  (*Id*. at  ¶ 27.)  Gasper then shot the dog.  (*Id*. at ¶ 19.)  At that time, Daniel, who was ten (10) years old at the time, was struck in the right foot and leg by four pellets .  (*Id*. at  ¶ 35.)

On December 20, 2004, Plaintiff Roberta Fulks, as guardian of Jimmy Lee Daniel, a minor, filed a Complaint against Defendant Gasper.  (Doc.1.)  In her Complaint, Fulks brings three claims against Gasper, on behalf of Daniels, for (1) excessive force (2) substantive due process and (3) battery.   On December 30, 2005, Gasper filed a Motion for Summary Judgment.  Both parties filed their briefs and the matter is now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *See id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that 1) there is no genuine issue of material fact and 2) she is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d Ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the

2

nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.  The court need not accept mere conclusory allegations or denials taken from the pleadings.  *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### 1.    Count I: Excessive Force

Fulks alleges that during the raid, Gasper entered the apartment wearing a black hood covering his face and carrying a shotgun. (Doc.1 at ¶ 7.)  Fulks further alleges that Gasper arrested and detained all occupants in the house and discharged his shotgun in the direction of Daniel.  (*Id*. at  ¶¶ 8-9.)  According to Fulks, as a result of this unjustifiable use of excessive deadly force (*Id*. at ¶ 10), Daniel suffers from pellet wounds (*Id*. at ¶ 11).  Despite the surgery to remove the pellets, two (2) pellets remain embedded in his right foot.  (*Id*.)

"To state a claim for excessive force as an unreasonable seizure under the Fourth

Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)).  Gasper moves for summary judgment on this claim because he argues that there was no seizure.  (Doc. 16 at 5.)  He contends that he intended to shoot the dog and as an unintended consequence, Daniel was hit by the pellets.  (*Id.*)  According to Gasper, there was no seizure of Daniel.  He argues that the Court must look only to the use of the force, namely the shooting and determine whether that constitutes a seizure.  (Doc. 26 at 2.)  Fulks, on the other hand, argues that seizure occurred when Gasper entered the house.  (Doc. 23-1 at 2.)  The Court agrees with Plaintiff.

The Supreme Court has defined a seizure in general terms as occurring when "by means of physical force or show of authority, [a person's] freedom of movement is restrained."  *United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *see also California v. Hodari D.*, 499 U.S. 621, 625-27 (1991); *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).  The Court went on to establish the test for when a seizure occurs: "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [s]he was not free to leave."  *Mendenhall*, 446 U.S. at 554.  In determining whether a seizure has occurred, the Supreme Court advised courts to look at circumstances such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  *Id.* at 554.

In the present case, Gasper allegedly entered the house at six (6) a.m. wearing a

black hood covering his face and carrying a shotgun. (Doc. 1 at ¶ 7.)  He allegedly arrested and detained all occupants in the house, who were not free to go. (*Id.* at ¶ 8.)  Fulks states that the police entered the apartment with their weapons drawn and pointed at the individuals in the apartment while issuing commands.  (Doc. 23-1 at 2.)  Gasper admits that seven officers entered the apartment.  (Doc. 19-2, Ex. 2, Gasper Dep. 77:14-15, Mar. 7, 2000.)  He also admits that he made aware that he was there with a search warrant (*Id.* at 86:1-22); that he shot the dog in a room with other people in it (*Id.* at 105:1-20); that he and other officers made sure everyone was on the ground and cuffed, including a juvenile  (*Id.* at 105:9-22); and that he "yelled 'clear' stating that the person were in custody" (*Id.* at 105:9-11).

In light of these facts, it appears that a reasonable person would have believed that he was not free to leave the house during the execution of the search warrant.  This constitute seizure under the Fourth Amendment.  It is true that officers executing search warrants have the authority to detain occupants of the house while conducting a proper search. *Muehler v. Mena,* 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers,* 452 U.S. 692, 705  (1981).).   But there is no doubt that detention of such an occupant, where the record demonstrates that the person was not free to leave the premise during the search, constitutes seizure under the Fourth Amendment.  *Michigan,* 452 U.S. at 696.

Gasper argues that the Court should weigh in on whether there was a seizure based on his shooting of the dog.  This suggestion of analysis seems misplaced.  As previously discussed, the seizure occurred when the officers entered the premises and detained the occupants.  *See, e.g., Sharrar v. Felsing,* 128 F.3d 810, 819 (3d Cir. 1997) (opining that even surrounding the house in a display of authority and physical force by officers

constituted seizure).  Gasper misapplies the ruling in the cases he relies on to the facts of this case.  For example, Gasper cites to *Brower v. Inyo County* in support of his argument that unintended consequences of a use of force are not the same as a seizure. 489 U.S. 593, 596-97 (1989).  Further reading of that case leads us to the understanding that "a seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Id.* at 596 (citations omitted).  As applied to the present case, the sole question of seizure goes to the detention of the apartment's residents, not to the shooting.  Whether the seizure was unreasonable will take into account the shooting that took place.  Hence, as the officers intended to detain the occupants, there was a seizure. Other cases that Gasper relies on similarly miss the mark. *Berg v. County of Allegheny,* 219 F.3d 261 (3d Cir. 2000), *Madeiros v. O'Connell,* 150 F.3d 164 (2d Cir. 1998) and *Landol-Rivera v. Cruz Cosme,* 906 F.2d 791 (1st Cir. 1990), deal with mistaken identity issues in hostage or false arrest situations.  Such is not the case here.

The remaining question is whether the seizure was unreasonable. The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.  *See Graham*, 490 U.S. at 396.  A court in making a reasonableness assessment also may consider the possibility that the persons

subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  *See Sharrar*, 128 F.3d at 822.  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

"Reasonableness" under the Fourth Amendment should frequently remain a question for the jury," *Abraham*, 183 F.3d at 290; however, "'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" *Id*. (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)); *see also Estate of Smith*, 318 F.3d at 516.

In the present case, Fulks alleges that Gasper discharged his shotgun in the direction of Daniel when he entered the apartment.  (Doc.1 at ¶ 9.)   Prior to entering the apartment, Gasper participated in a briefing session where he was informed that there might be approximately four adults and one child in the house.  (Doc. 19-2, Ex. 2, Gasper Dep. 21:13-14.)  Gasper stated in his deposition that he was given a shotgun because there was a pit bull in the apartment.  (*Id.* at 73:1-3.)  When he entered the house, Gasper stated that he saw a woman with the dog and what appeared to be two men.  (*Id.* at 90:13-17; 92:18-25.) He was not sure if he saw the child at that time.  (*Id.* at 90:18-23.)  Gasper stated that the dog was barking, growling and being ferocious.  (*Id.* at 90:19-23.)  He stated that the dog

was moving around and he was three feet away when he shot the dog in the head.  (*Id.* at 105: 19-20.)

Daniel stated in his deposition that the police broke down the door and by the time they entered the room, the dog was sitting down.  (Doc. 19-3, Ex. 3, Daniel's Dep. 41:4-12, June 13, 2005.)  He also stated that the police told his mom to get the dog and when she went to do so, the police fired.  (*Id.* at 41:15-17.)   Daniel stated that he was next to the dog (*Id.* at 41:21-22) and at the time the police shot the dog, his mother's hand was on the dog (*Id.* at 41:24-25).  Annette Lee Daniel, his mother, stated in her deposition that the dog was sitting in front of her when the police told her to grab her dog.  (Doc.19-3, Ex.5, Daniel's Dep. 42:10-14, May 12, 2000.)

Resolving all factual disputes in favor of Plaintiff, it cannot be said that Gasper's use of force was objectively reasonable under the circumstances.  Genuine issues of material fact exist as to whether Gasper violated Daniel's Fourth Amendment right to be free from unreasonable seizure through the use of excessive force. Therefore, Defendant's motion for summary judgment as to Count I will be denied.

**2.    Count II: Substantive Due Process**

Fulks alleges that Gasper violated Daniel's substantive due process right because Daniel had a right not to be shot in his home.  (Doc. 1 at ¶ 12-13.)  "The touchstone of due process is protection of the individual against arbitrary action of government."  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (citing *Dent v. West Virginia*, 129 U.S. 114, 123 (1889)).  Substantive due process prevents government from exercising power without a legitimate objective.  *Lewis*, 523 U.S. at 846 (citing *Daniels v. Williams*, 474 U.S. 327, 331

(1986)).  To succeed on a substantive due process claim, Plaintiff must show conduct by the Defendants which shocks the conscience.  The conduct must be evaluated within the context of the particular event.  *See, e.g., Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir. 2000) (citing *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999)).  There is no clear explanation of what conduct is conscience-shocking, but the Supreme Court has stated that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (citing *Daniels*, 474 U.S. at 331).

In the present case, without going into the merits of Plaintiff's substantive due process claim, Count II will be dismissed.  The Supreme Court has ruled that "[*A*]*ll* claims that law enforcement officers have used excessive force -- deadly or not - - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under the 'substantive due process' approach." *Graham,* 490 U.S. at 395 (emphasis in original); *see also Lewis,* 523 U.S. at 843 ("Substantive due process analysis is therefore inappropriate in this case only if respondent's claim is 'covered by' the Fourth Amendment.").  The Court has decided that Plaintiff has a claim under the Fourth Amendment.  Therefore, Plaintiff's motion for summary judgment as to Count II will be granted.

## 3.    Count III: Battery

Fulks alleges that Gasper committed battery against Daniel because the shooting resulted in an unauthorized touching of Daniel's body.  (Doc.1 at ¶ 15-16.)  In his motion for summary judgment, Gasper claims that he is immune under 42 Pa. C.S.A. § 8546.  In his

supplemental brief, Gasper retracts that argument and claims that 42 Pa. C.S.A. § 8953(d) grants him immunity as he was a local officer acting at the request of a state law officer. (Doc. 29 at 2.)  Gasper argues that the Court should decide the state law battery claim only if the Court decides that 42 Pa. C.S.A. § 8953 does not apply to him.

42 Pa. C.S.A. § 8953 grants statewide municipal police jurisdiction to "[a]ny duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction."  In his supplemental brief, Gasper does not provide the Court with any information on whether he was beyond the territorial limits of his primary jurisdiction when he executed the search warrant.  The only information the Court has is that Gasper was a member of the Stroudsburg Borough Police Department (Doc. 17 at ¶ 1) and that  the execution of the search warrant took place in Stroudsburg, Pennsylvania.  With the information provided, the Court must assume that Gasper was working within the territorial limits of his primary jurisdiction.  Therefore, the Court is of the opinion that  42 Pa. C.S.A. § 8953(d) does not apply to Gasper.

With this background, the Court will now address whether 42 Pa. C.S.A. § 8550 is appropriate.  42 Pa. C.S.A. § 8546 grants official immunity, "[i]n any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee."  This grant of immunity is limited by 42 Pa. C.S.A. § 8550 which states that "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee cause the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections. . . 8546. . . shall not apply."

10

Hence, a battery claim against Gasper, in his individual capacity, will stand if the Court determines that there was willful misconduct. *Pepiton v. City of Farell,* No. 05-0573, 2005 U.S. Dist. LEXIS 23873, at * 13-14 (W.D. Pa. Oct. 17, 2005).

The Pennsylvania Supreme Court defined willful misconduct as follows:

> Willful misconduct . . . has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that I was substantially certain to follow, so that such desire can be implied. . . . To prove willful misconduct, a plaintiff must establish that the actor desired to bring about the result that followed, or at least it was substantially certain to follow, *i.e.,* specific intent.

*Bright v. Westmoreland County,* 443 F.3d 276, 287 (3d Cir. 2006) (citing *Robbins v. Cumberland County Children and Youth Serv.,* 802 A.2d 1239, 1252-53 (Pa. Commw. Ct. 2002)).   Merely negligent acts cannot constitute willful conduct.   *Willowby v. City of Philadelphia,* No. 95-6143, 1996 U.S. Dist. LEXIS 7378, at *22 (E.D. Pa. May 21, 1996) (citing *Wilson v. Pennsylvania Railroad Co.,* 219 A.2d 666, 671 (Pa. 1966)).   While in certain context, willful misconduct has been equated with intentional tort, when evaluating claims of police misconduct, such has not always been the case. *Willowby,* 1996 U.S. Dist. LEXIS 7378, at *20 (citing *Renk* v. *City of Pittsburg,* 641 A.2d 289, 293 (Pa. 1994)).

"At common law, as applied in Pennsylvania, an intentional attempt to inflict physical injury on another constitute assault and the actual infliction of such injury, however minor, constitutes battery."   *Ehahili v. City of Philadelphia,* No. 03-3331, 2004 U.S. Dist. LEXIS 18544, at *24 (E. D. Pa. Sept. 10, 2004 ) (quoting *Kedra v. City of Philadelphia,* 454 F. Supp. 652, 667 (E.D. Pa. 1978)).   In this case, Fulks alleges that Gasper committed battery against Daniel.   Battery is an intentional tort. The elements of battery are:

11

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results.

*Willowby*, 1996 U.S. Dist. LEXIS 7378, at *22 (quoting RESTATEMENT (SECOND) OF TORTS § 18).  Given this broad definition of the tort, a fact finder can reasonably find that  Gasper's actions constituted battery.

"In an action for assault and battery, an officer may be liable if it is shown not just that he acted intentionally, but also that the officer knew that the force used was not reasonable under the circumstances."  *Tarlecki v. Mercy Fitzgerald Hosp.,* No. 01-1347, 2002 U.S. Dist. LEXIS 12937, at *7 (E.D. Pa. July 15, 2002) (citations omitted).  Additionally, "a police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest in unnecessary or excessive."  *Doby v. Decrescenzo,* No. 94-3991, 1996 U.S. Dist. LEXIS 13175, at *110 (E.D. Pa. Sept. 9, 1996) (quoting *Renk,* 641 A.2d at 293).  As previously stated in the Court's analysis of Plaintiff's Count I, Fourth Amendment claim, factual disputes exist as to whether Gasper's actions were unreasonable.   The same analysis applies to whether or not there was a battery.  Therefore, Defendant's motion for summary judgment on Count III will be denied.

### CONCLUSION

Defendant's Motion for Summary Judgment (Doc.15) will be granted in part and denied in part.  Defendant's motion as to Counts I and III will be denied as factual disputes exist as to whether Gasper's actions were unreasonable.  Count II will be dismissed as the

claim is determined by the Fourth Amendment, which is in Count I.

An appropriate Order follows.


 July 13, 2006                                              /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERTA FULKS, as guardian of
JIMMY LEE DANIEL, a minor,                          CIVIL ACTION NO. 3:04-CV-2752

     Plaintiff,                                          (JUDGE CAPUTO)

        v.

PAUL GASPER,

     Defendant.

<u>**ORDER**</u>

    **NOW**, this 13th day of July, 2006, **IT IS HEREBY ORDERED** that Motion for

Summary Judgment (Doc.15) of Defendant is **GRANTED in part** and **DENIED in part**:

        (a)    The motion is **GRANTED** insofar as it seeks summary judgment with
               respect to Count II.

        (b)    The motion is **DENIED** insofar as it seeks summary judgment with
               respect to Count I and Count III.

                          /s/ A. Richard Caputo
                        A. Richard Caputo
                        United States District Judge